**Mario BENAVIDEZ, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ. 95–0823 LH/WWD.**

United States District Court,
D. New Mexico.

July 28, 1997.

Bruce E. Pasternack, Pasternack & Blake, Albuquerque, NM, for Plaintiff.

Raymond Hamilton, Jan E. Mitchell, Ronald F. Ross, Joan M. Hart, U.S. Attorney's Office, Albuquerque, NM, for Defendant.

## MEMORANDUM OPINION

HANSEN, District Judge.

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b) or, in the Alternative, Motion for Summary Judgment Pursuant to FED.R.CIV.P. 56(b) (Docket No. 147), filed November 18, 1996, and the Defendant's Motion for Dismissal of a Claim of Medical Malpractice, or, in the Alternative, for Partial Summary Judgment as to Limitation of Damages (Docket No. 151), filed November 18, 1996. The Court, having considered the pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that the Defendant's Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b) (Docket No. 147–1) is well taken and will be granted. The Court, having concluded that it does not have jurisdiction over this matter, will **deny** Defendant's Alternative Motion for Summary Judgment Pursuant to FED. R.CIV.P. 56(b) (Docket No. 147–2) and Defendant's Motion for Dismissal of a Claim of Medical Malpractice, or, in the Alternative, for Partial Summary Judgment as to Limitation of Damages (Docket No. 151) as moot.

## BACKGROUND

Plaintiff Mario Benavidez filed this action against the United States claiming that the federal Indian Health Service (IHS) is liable for professional negligence (Count I), negligent hiring, placement, and supervision (Count II), negligent failure to warn (Count III), negligent breach of duty to control (Count IV), and negligent breach of fiduciary duty (Count V) for its failure to adequately control and/or supervise David J. Bullis, Ph.D. (Bullis), a psychologist employed by IHS. Plaintiff claims that as a result he was sexually abused by Bullis while under his care from July, 1992, to October, 1994. (First Am. Compl. ¶ 15.)

Specifically, Plaintiff avers that when IHS hired Bullis as a psychologist it failed to adequately investigate Bullis' background and qualifications and failed to discover that he was "a pedophile and/or ephebophile." (*Id.* ¶ 6.) Plaintiff began being counseled by Bullis in 1987, at age fourteen, after his brother committed suicide. (*Id.* ¶ 12.) Plaintiff alleges that "[a]t all times during which he provided psychological counseling to [Plaintiff] Mario [Benavidez,] Bullis was an employee of IHS, acting within the course and scope of his employment." (*Id.*) Plaintiff further alleges that "[i]n July of 1992, [after] Mario had been Bullis' patient for three (3) years, Bullis began to negligently mismanage the transference phenomenon which is present in all psychotherapeutic relationships, and to thereby take advantage of the respect and admiration Mario had developed for Bullis by engaging Mario in sexual contact which Bullis represented to be beneficial and therapeutic." (*Id.* ¶ 14.) Moreover, Plaintiff avers, "Bullis negligently provided Mario with liquor and used marijuana with Mario, explaining to Mario that the use

of such substances was appropriate and therapeutic as long as the use was undertaken in Bullis' presence." (*Id.*) Plaintiff alleges that this behavior continued until October of 1994, and that beginning "in the Summer of 1993, Bullis also began negligently using therapy sessions to convince Mario that Mario was homosexual, and that Mario should lead a homosexual lifestyle." (*Id.* ¶ 15.) Finally, Plaintiff alleges that after Plaintiff was hospitalized on January 18, 1994, for drug dependency, dysphoria, and sleep disturbance and was subsequently referred to a drug and alcohol rehabilitation center in Colorado, Bullis attempted "to have sex with Mario" while transporting him to the Colorado center. (*Id.* ¶ 16.) Plaintiff further contends that "Bullis continued to pursue [the Plaintiff] sexually, and to invite him to bars and to offer him liquor and illegal drugs, but finally in October of 1994, Mario terminated all contact with Bullis." (*Id.* ¶ 18.) As a result of Bullis' actions, Plaintiff alleges he was seriously injured. (*Id.* ¶ 19.)

## DISCUSSION

Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990). In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A court should not grant a motion to dismiss for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Therefore, "the issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236.

Plaintiff brings his claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq,* and maintains that this Court has jurisdiction pursuant to the federal question statute, 28 U.S.C. § 1346(b). (First Am. Compl. ¶ 1.) Defendant moves this Court to dismiss pursuant to Federal Rule of Civil Procedure 12(b), arguing that the Court lacks jurisdiction over Counts I and V because the alleged actions did not take place within the scope of Bullis' employment (Def.'s Mem. Supp. Mot. Dismiss Pursuant FED.R.CIV.P. 12(b) or, Alt. Mot. Sum. J. Pursuant FED.R.CIV.P. 56(b) (hereinafter Def.'s Mem. II) at 5–12.) Defendant argues further that pursuant to the assault and battery [1] and the discretionary function [2] exceptions to the FTCA the Court lacks jurisdiction over Counts II–IV. (*Id.* at 12–19, 20–25.) Thus, Defendant argues that this Court lacks jurisdiction over this entire action, and therefore, it must be dismissed.

## I. FEDERAL TORT CLAIMS ACT

As the Government observes, the United States is sovereign and, as such, is immune from suit unless it explicitly waives its immunity. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). "Unless Congress has consented to a cause of action against the United States, there is no jurisdiction in any court to entertain such a suit." *Jarrett v. United States*, 874 F.2d 201, 203 (4th Cir.1989) (citing *United States v. Sherwood*, 312 U.S. 584, 587–88, 61 S.Ct. 767, 770–71, 85 L.Ed. 1058 (1941)). The FTCA waives the United States' sovereign immunity under very limited circumstances. 28 U.S.C. § 1346; *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). The grant of jurisdiction pertinent to this action provides:

[t]he district courts ... have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or

---

1. The FTCA does not waive immunity for "any claim arising out of assault [and] battery...." 28 U.S.C. § 2680(h).

2. The FTCA does not waive immunity for "any claim based upon an act or omission of an em-

ployee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance ... [of] a discretionary function...." 28 U.S.C. § 2680(a).

wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Thus, "[a] substantive cause of action is not created by 28 U.S.C. § 1346(b)," rather, it is only a grant of jurisdiction. *Jarrett*, 874 F.2d at 202. This grant of jurisdiction is, however, limited to "actions taken within the scope" of a federal employee's office or employment, 28 U.S.C. § 1346(b)(1), and does not grant jurisdiction over claims arising out of assaults or batteries, 28 U.S.C. § 2680(h), or acts or omissions taken in the exercise of a discretionary function, 28 U.S.C. § 2680(a).

### A. Course and Scope of Employment

■ The jurisdiction of this Court over Plaintiff's claims against the United States for the acts or omissions of employees at IHS is first dependent upon whether Bullis was "acting within the scope of his office or employment" when he committed the acts alleged by the Plaintiff. *See* 28 U.S.C. § 1346(b). The "determination of whether an employee of the United States acted within [his or] her scope of employment is a matter of state law." *Flechsig v. United States*, 991 F.2d 300, 302 (6th Cir.1993) (citations omitted).[3]

■ Defendant argues that the actions Plaintiff claims Bullis took do not fall within the course and scope of his employment. Essentially, Defendant maintains that Bullis was not hired by IHS to have sex with patients, that the alleged incidents did not take place within the employment context, and that the actions cannot be construed to "have been actuated by a purpose to serve" IHS or its interests. (Def.'s Mem. II at 7–8.)

Plaintiff responds that he has alleged that "Bullis' negligence includes, among other things, his failure to maintain appropriate boundaries, to refer Plaintiff to a different therapist, to properly counsel Plaintiff with regard to his alcohol and marijuana use, and the fact that Bullis exacerbated Plaintiff's drug and alcohol dependence by failing to render proper treatment and by buying alcohol and using alcohol and marijuana with Plaintiff." (Pl.'s Resp. Mot. Dismissal Claim of Medical Malpractice (hereinafter Pl's Resp. I) at 3.) Furthermore, Plaintiff argues that Bullis' personal motivations for his sexual activities with the Plaintiff do not *per se,* extract those actions from the course and scope of his employment. (*Id.* at 3.)

The Plaintiff is correct in his assertion that his complaint does not simply allege sexual misconduct on the part of Bullis, but also alleges that "Bullis negligently provided Mario with liquor and used marijuana with Mario ... and copiously used the liquor and marijuana with Mario." (First Am. Compl. ¶¶ 14–15.) Moreover, Plaintiff alleges that Bullis succeeded in overwhelming Plaintiff's will and engaged him in sexual contact and the use of liquor and drugs by taking "advantage of the respect and admiration Mario had developed for Bullis" through his psychotherapeutic treatment of the Plaintiff. (*Id.* ¶ 14.) Plaintiff also contends that Bullis used therapy sessions, beginning in the Summer of 1993, to achieve his aims. (*Id.* ¶ 15, *see also* Pl's Resp. I at 10 (noting that "it was during these counseling sessions, both in and out of the office, that Bullis began the process of sexualizing his relationship with Plaintiff").)

The Court observes that this does not inevitably lead to the conclusion that Bullis was

---

**3.** The New Mexico Court of Appeals has held that "under New Mexico law, whether an employee's act was committed in the course and scope of employment is not determinable by any one criterion." *Narney v. Daniels*, 115 N.M. 41, 846 P.2d 347 (App.1993). The court went on to adopt a four factor test to assist courts in analyzing whether particular actions are within the course and scope of employment:

An employee's action, although unauthorized, is considered to be in the scope of employment if the action (1) is the kind the employee is employed to perform; (2) occurs during a period reasonably connected to the authorized employment period; (3) occurs in an area reasonable close to the authorized area; and (4) is actuated, at least in part, by a purpose to serve the employer.

*Id. See also Gonzales v. Southwest Security and Protection Agency, Inc.,* 100 N.M. 54, 55, 665 P.2d 810, 811 (App.1983); *Medina v. Graham's Cowboys, Inc.,* 113 N.M. 471, 827 P.2d 859 (Ct. App.1992).

acting within the course and scope of his employment. However, given the complexity of the interrelationship between the acts Bullis' took in formal therapy sessions to further his sexual assaults, Bullis' use of alcohol and drugs to weaken the Plaintiff's will, and the position of trust and authority Bullis occupied in the Plaintiff's life,[4] the Court will assume, without deciding, that all of the acts alleged took place in the course and scope of Bullis's employment. Thus, for purposes of argument, the Court assumes that the Plaintiff has overcome the first jurisdictional hurdle of the FTCA.

### B. Assault and Battery Exception

■ In addition to the course and scope requirement, as noted above, there are a variety of exceptions to the limited waiver of immunity under the FTCA. The Defendant argues that the Court does not have jurisdiction over Counts II, III, and IV as those claims arise out of assaults and batteries. (Def.'s Mem. II at 12–19 (citing 28 U.S.C. § 2680(h)).)

While the Court has assumed *arguendo* that the acts alleged to have been taken by

Bullis were within the scope of his employment, the Court does not conclude that these actions were "negligent." Rather, it is clear, despite the Plaintiff's best efforts to wrap his allegations in the negligence language of the FTCA, that the Plaintiff is actually alleging that Bullis intentionally misused his therapeutic relationship with the Plaintiff to *force* the Plaintiff to engage in sexual contact with him. (*See, e.g.,* First Am. Compl. ¶ 15 (stating that "Bullis *engaged* in ... psychological manipulation so as to *negligently manipulate* Mario into a long-term sexual relationship which served Bullis' needs ...") (emphasis added).) In other words, the Plaintiff alleges repeated sexual assaults—there is no doubt that Plaintiff *does not* allege that the sexual acts were consensual—by Bullis upon the Plaintiff while the Plaintiff was under his care.[5] (*See* First Am. Compl. ¶¶ 7–9, 13–19.) Plaintiff's belated effort to characterize the sexual acts as "malpractice"—as opposed to assaults—is disingenuous and is nothing more than an effort to fit a round peg into a square hole. (*See* Pl.'s Resp. I at 12–14.) There can be no doubt that under the facts as the Plaintiff has alleged them, Bullis vi-

---

4. The Plaintiff relies heavily on the Ninth Circuit's opinion in *Simmons v. United States*, 805 F.2d 1363 (9th Cir.1986) to argue that the psychotherapeutic phenomenon of transference broadens the scope of what actions fit within the course of a psychologists's employment. "Transference is crucial to the therapeutic process because the patient unconsciously attributes to the psychiatrist or analyst those feelings which he may have repressed towards his own parents." *Id.* at 1365 (internal quotations omitted) (citations omitted). The *Simmons* Court concluded that "[t]he crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologist do not offer a course of treatment and counseling predicated upon handling the transference phenomenon." *Id.* at 1366.

The Court has considered *Simmons*, and its reasoning, and finds that Plaintiff's reliance on it as persuasive authority is misplaced. The Court does not share the Ninth Circuit's view that the transference phenomenon necessarily sets the psychotherapist apart from other professionals who also engage in relationships based on trust and involve substantial differences in power, confidence, and education between the participants. Nonetheless, the Court does recognize

the impact such a powerful relationship can have on the weaker participant, and the damage which can result, should that trust be abused.

5. The Plaintiff points the Court to *Andrews v. United States*, 732 F.2d 366 (4th Cir.1984), to argue that the proper characterization of the sexual acts committed by Bullis on the Plaintiff is malpractice, as opposed to assault. In *Andrews* the court characterized the sexual acts perpetrated by a physician's assistant as malpractice because the plaintiff consented to the acts having been convinced that it was "the best course of treatment for her." *Id.* at 368. In this case, no consent has been alleged, nor could it be, as the complaint avers that Bullis forced himself on the Plaintiff by misusing the therapeutic relationship and by encouraging the Plaintiff to use alcohol and drugs. (*See* First Am. Compl. ¶ 14) Moreover, as the complaint points out, the Plaintiff was in no condition at the time of the abuse to give his consent, and had essentially turned his will over to Bullis. (*Id.* ¶¶ 11–14.) Thus, the Court concludes a more analogous case is *Thigpen v. United States* where the court held "that 28 U.S.C. § 2680(h) erects a bar to *all claims which rely on the existence of an assault or battery* by a government employee" and rejected the application of *Andrews'* reasoning where consent was absent. 800 F.2d 393, 394–97 (4th Cir.1986) (emphasis added).

ciously manipulated the Plaintiff by using his authority as therapist and by supplying the Plaintiff with alcohol and drugs in order to effectuate the sexual assaults.[6] As alleged, the Plaintiff was in no condition to consent to sexual relations, and was clearly repeatedly assaulted by Bullis. The Court also concludes that the actions facilitating the assaults were part and parcel with the assaults themselves, just as any cajoling, intimidating, or forceful action taken by any other rapist to effectuate his assault is a part of the rape itself.

As the Court has noted, the FTCA, does not waive the United States' immunity for "any claim arising out of assault [and] battery...." 28 U.S.C. § 2680(h). It is clear to the Court that the claims in Count I (Professional Negligence), Count II (Negligent Hiring, Placement and Supervision), Count III (Negligent Failure to Warn), Count IV (Negligent Breach of Duty to Control), and Count V (Negligent Breach of Fiduciary Duty) arise out of the sexual assaults alleged to have been committed by Bullis while he was in the employ of IHS. If not for the sexual abuse, and the other intentional torts alleged by the Plaintiff to have been taken to actuate the assaults. Plaintiff would have no claims. *See Hoot v. United States,* 790 F.2d 836, 839 (10th Cir.1986) (noting "[a]bsent the assault and battery perpetrated on Hoot by Frith, there would be no claim" and holding that the negligence claim against the United States " 'arose out of' the assault and battery and no amount of 'semantics' can change it").

In Count I, the Plaintiff alleges that Bullis' conduct, including his sexual assaults, his "mismanagement of the transference phenomenon," and his inappropriate use of alcohol and drugs. constituted a breach of Bullis' professional duty which caused Plaintiff's injuries and for which IHS is responsible as his employer. (First Am. Compl. ¶¶ 21–23.) In Count II, Plaintiff again alleges that IHS knew or should have known that Bullis would sexually assault his patients, rather than provide psychological services, and therefore, IHS breached its duties "which proximately caused Mario to suffer the damages referenced." (*Id.* ¶ 27.) Likewise, in Count III, Plaintiff avers that "IHS knew or should have known of Bullis' aberrant behavior, and knew or should have known that it had a duty to warn children and others who were likely to be subjected to Bullis of his aberrant sexual propensities" and that IHS's breach of its duty to warn "proximately caused Mario to suffer ... damage." (*Id.* ¶¶ 29, 30.) Court IV similarly alleges that IHS had a duty to control Bullis, and its failure to do so "proximately caused Mario to suffer ... damage." (*Id.* ¶¶ 33, 34.) Finally, Count V alleges the sexual assaults occurred while Bullis was in "the employ and control of IHS," that IHS had a fiduciary duty to Plaintiff which it breached, and that the Plaintiff suffered injuries as a result. (*Id.* ¶¶ 36, 37.)

Each of these claims are based upon the injury caused by Bullis' sexual assaults upon the Plaintiff and his misuse of his professional relationship with the Plaintiff. Thus, each of these claims "arises out of" the sexual assaults and other intentional torts alleged in the complaint, notwithstanding the Plaintiff's efforts to characterize these claims as sounding in negligence. *See Hoot,* 790 F.2d at 838 (holding "in any case in which the employee has intentionally injured another, the tort asserted against the government, regardless of whether it is called negligence, is indeed an intentional tort attributable to the government"); *Naisbitt v. United States,* 611 F.2d 1350 (10th Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980) (holding

---

6. Nonsensical phrases in the complaint, such as "*negligently* mismanage the transference phenomenon ... [to] take advantage of" the Plaintiff, (First Am. Compl. ¶ 14); "Bullis engaged in ... psychological manipulation so as to *negligently* manipulate Mario," (*Id.* ¶ 15); and "*negligently* mismanaged the transference phenomenon by attempting to have sex with Mario on the way to Denver," (*Id.* ¶ 16), make it clear to the Court that Plaintiff's counsel is merely attempting to fit the intentional abuse and manipulation of an essentially helpless young man in Bullis' charge into the constraints of the FTCA by placing the word "negligent" before each description of Bullis' intentional acts. While the Court is deeply disturbed by the allegations of abuse by Bullis, it cannot countenance an overly broad reading of the FTCA which would extend the waiver of immunity beyond that which Congress intended. *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979); *United States v. Orleans,* 425 U.S. at 814 (holding "due regard must be given to the exceptions" to the FTCA).

where two off-duty airmen committed rape, assaults, and murders, "attempt to establish liability on a negligence basis is ... [merely] an effort to circumvent the retention of immunity provided in [28 U.S.C.] § 2680(h)"). These claims are, therefore, excluded from the ambit of the FTCA and are barred by the doctrine of sovereign immunity. *See Wine v. United States,* 705 F.2d 366, 367 (10th Cir.1983) (holding that 28 U.S.C. § 2680(h) bars suits "against the government in all cases where the intentional tort was committed by a government employee"). Therefore, Defendant's motion to dismiss will be granted on all counts as, even assuming the truth and accuracy of these horrific claims, they are excepted from the FTCA by section 2680(h) and are barred by the doctrine of sovereign immunity.

## II. CONCLUSION

The Defendant argues that Count II is also barred by the discretionary function exception. Specifically, the Defendant argues that "[i]n selecting Bullis for the position, the selecting official applied his own independent judgment and discretion in making the decision that he was the best candidate for the position." (Def.'s Mem. II at 22.) Noting that the decision to hire Bullis was made "independent of any statute, regulation, or guideline mandating" the choice, the Defendant argues that hiring decisions of this type are "precisely the kind which Congress meant to protect with the discretionary function exception." (*Id.*) Likewise, Defendant argues that while supervision of Bullis was required by policy and guidelines, the scope and means to effectuate that supervision fall within the discretionary function exception. (*Id.* at 23–24.)

Given the Court's conclusion that all of Plaintiff's claims are barred by the assault and battery exception to the FTCA, the Court need not decide whether the discretionary function exception provides an additional bar to any of Plaintiff's claims. However, the Court notes that Defendant's argument appears to be meritorious, particularly as applied to Count II of the complaint, and may indeed be an additional bar to the Plaintiff's complaint. In a similar vein, the Court finds that Defendant's alternative motion for summary judgment is moot, as the Court has concluded that it lacks jurisdiction over Plaintiff's claims, and therefore, that motion will be denied. Likewise, the Court cannot consider Defendant's Motion for Dismissal of a Claim of Medical Malpractice, or, in the Alternative, for Partial Summary Judgment as to Limitation of Damages as it lacks jurisdiction and that motion will also be denied as moot. An Order consistent with this Memorandum Opinion, granting Defendant's motion to dismiss, is entered contemporaneously.