UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MARIO G. BENAVIDEZ,

      Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

No. 97-2313

Order
Filed June 8, 1999

Before **PORFILIO**, **KELLY** and **LUCERO**, Circuit Judges.

      Appellant's unopposed motion to delete the name of Cathleen Cain from the caption of this appeal is granted. The revised slip opinion cover sheet is attached to this order.

                                  Entered for the Court
                                  PATRICK FISHER, Clerk of Court


                                  by:

                                  Keith Nelson
                                  Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**



**MAY 20 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARIO G. BENAVIDEZ,

       Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

       Defendant - Appellee.

No. 97-2313

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-95-823-LH)**

---

Bruce E. Pasternack (Neil R. Blake and Valerie A. Chang with him on the briefs), Pasternack and Blake, P.C., Albuquerque, NM, for Plaintiff - Appellant.

William G. Cole (Frank W. Hunger, Assistant Attorney General, John J. Kelly, United States Attorney, and Robert S. Greenspan with him on the brief), Department of Justice, Washington, D.C., for Defendant - Appellee.

---

Before **PORFILIO**, **KELLY** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

This appeal raises the issue of whether the intentional tort exception to the

Federal Tort Claims Act ("FTCA") applies to a suit alleging that a government-

employed psychologist negligently mismanaged the patient-therapist relationship by engaging in sexual contact and drug and alcohol abuse with his patient. Concluding that the therapist's actions constituted an intentional tort, the district court dismissed appellant's suit for lack of jurisdiction. See Benavidez v. United States, 998 F. Supp. 1225, 1231 (D.N.M. 1997). We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I

Appellant Mario G. Benavidez is a member of the Laguna Pueblo Indian Tribe in New Mexico. As a teenager, Benavidez suffered from depression and a drug and alcohol dependency problem that led to frequent arrests by the local police. After attempting suicide, Benavidez was referred by the police and the Indian Health Service ("IHS")[1] to a government-employed psychologist, Dr. David J. Bullis, for counseling. Bullis diagnosed Benavidez, who was then just shy of his sixteenth birthday, as suffering from a variety of psychological disorders, including depression with suicidal intent, polysubstance abuse, and cannabis dependence.

Despite this diagnosis, Bullis allegedly told Benavidez that continued alcohol and drug abuse would be appropriate and even therapeutic. Bullis also

---

[1]The IHS is a division of the Public Health Service of the United States Department of Health and Human Services.

allegedly used therapy sessions to convince Benavidez that he was homosexual and that he should have sex with Bullis. During the course of the patient-therapist relationship, Bullis allegedly engaged in sexual contact with Benavidez. Together, the two also allegedly used alcohol, marijuana and other illegal drugs.[2]

The record includes testimony that Bullis had a reputation for using drugs and alcohol with many of his teenage patients, and Bullis himself told one of his supervisors that he had engaged in "some exploratory sexual contact" with Benavidez. The supervisor never notified his superiors of Bullis's conduct, but merely wrote in his notes that he felt comfortable allowing Bullis to continue with his regular duties. The IHS did not relieve Bullis of his clinical responsibilities until January 1995, when Benavidez filed an administrative tort claim against the agency.

In July 1995, Benavidez, acting pursuant to 28 U.S.C. § 2675(a), filed suit in the United States District Court for the District of New Mexico,[3] alleging various injuries as a result of Bullis's conduct and seeking recovery against the

_____

[2]Benavidez claims that he was Bullis's patient from February 1989 to October 1994. In granting the government's motion to dismiss, the district court assumed "that all of the acts alleged took place in the course and scope of Bullis's employment." Benavidez, 998 F. Supp. at 1229. Because we are reviewing the district court's dismissal of Benavidez's complaint, we also assume that Bullis acted within the course and scope of his employment as a government psychologist.

[3]As required by 28 U.S.C. § 2675(a), Benavidez first filed his claim with the IHS. Because the IHS failed to dispose of the claim within six months of its filing, Benavidez properly instituted this action in federal district court.

United States under the respondeat superior theory of liability. The district court concluded that Benavidez's allegations constituted a claim for assault and battery rather than for professional negligence or malpractice. Applying the intentional tort exception to the FTCA's waiver of sovereign immunity, the court thus granted the government's motion to dismiss for lack of jurisdiction.[4]

## II

We subject to de novo review the question of whether a district court has subject matter jurisdiction to hear a tort claim against the United States. See Franklin v. United States, 992 F.2d 1492, 1495 (10th Cir. 1993), aff'd on appeal after remand, 34 F.3d 1076 (10th Cir. 1994).

The FTCA provides that the United States can be sued for personal injury resulting from:

> [The] negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

---

[4]In addition to its motion to dismiss for lack of subject matter jurisdiction, the government filed an alternative motion for summary judgment. Having granted the motion to dismiss, the court denied the alternative motion as moot. It also denied as moot a separate motion to dismiss Benavidez's medical malpractice claim, and an alternative motion for partial summary judgment as to limitation of damages.

28 U.S.C. § 1346(b)(1). But this waiver of sovereign immunity does not extend to claims arising out of assault or battery. See 28 U.S.C. § 2680(h).

The issue before us, therefore, is whether, Bullis's alleged conduct constituted a "negligent, or wrongful act" rather than an assault or battery for purposes of the FTCA. "[W]e assume Congress proceeded from an understanding of established tort definitions when enacting and amending the various sections of the FTCA." Franklin, 992 F.2d at 1495. Thus, although the issue of whether a claim falls within the FTCA's waiver of immunity is a matter of federal law, a resolution of that issue often turns on the "traditional and commonly understood legal definition of the tort" that the plaintiff alleges. United States v. Neustadt, 366 U.S. 696, 706 (1961).

## A

A review of relevant federal and state court cases shows that Bullis's conduct has traditionally been understood and commonly defined as negligent malpractice, which does not fall within the intentional tort exception to the FTCA's waiver of sovereign immunity. See, e.g., Simmons v. United States, 805 F.2d 1363, 1368-71 (9th Cir. 1986); Andrews v. United States, 732 F.2d 366, 371 (4th Cir. 1984); Doe v. Samaritan Counseling Center, 791 P.2d 344, 348-49 (Alaska 1990); Corgan v. Muehling, 522 N.E.2d 153, 156-57 (Ill. App. Ct. 1988),

aff'd, 574 N.E.2d 602 (Ill. 1991); Zipkin v. Freeman, 436 S.W.2d 753, 761-62 (Mo. 1968).

In Simmons, for example, an IHS therapist seduced his patient, a member of the Chehalis Indian Tribe, into a sexual relationship. See Simmons, 805 F.2d at 1364. The patient suffered a subsequent deterioration in her mental and emotional health. Another therapist traced her worsening condition to the sexual relations she had with the former therapist. The patient thereupon filed suit against the government under the FTCA, and the district court entered judgment in her favor. Dismissing the government's appeal, the Ninth Circuit ruled that by seducing his patient, the therapist had mismanaged the "transference phenomenon" and thus engaged in negligent malpractice. See id. at 1365.

"Courts have uniformly regarded mishandling of transference as malpractice or gross negligence." Id. (citing cases); see also Greenberg v. McCabe, 453 F. Supp. 765, 771-72 (E.D. Pa. 1978), aff'd, 594 F.2d 845 (3rd Cir. 1979); Samaritan Counseling Center, 791 P.2d at 348. The "transference phenomenon" refers to the tendency of patients to become emotionally dependent upon, and trusting of, their psychologist or psychiatrist. See generally Michael D. McCafferty & Steven M. Meyer, Medical Malpractice: Bases of Liability § 10.18 (1985) (explaining that transference "is one of the most significant concepts in psychoanalytic therapy," and accounts for the "strong dependency of

the patient upon the therapist"). Specifically, transference describes a patient's "projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past." Simmons, 805 F.2d at 1364 (quoting Stedman's Medical Dictionary, 1473 (5th Lawyer's Ed. 1982)).

Although it occurs in other professional relationships, "it is only in psychotherapy that the management of this [transference] effect is so critical—legally as well as therapeutically." Joseph T. Smith, Medical Malpractice: Psychiatric Care § 9.10 (1995). No other professional relationship "offer[s] a course of treatment and counseling predicated upon handling the transference phenomenon." Simmons, 805 F.2d at 1366 (citing Alan A. Stone, Law, Psychiatry, and Morality 199 (1984)). In order to manage the transference phenomenon properly a therapist must avoid emotional involvement with a patient who transfers feelings of affection to him. See Aetna Life & Cas. Co. v. McCabe, 556 F. Supp. 1342, 1346 (E.D. Pa. 1983).

Despite the wide acceptance of transference in the medical and legal communities, the district court summarily dismissed the Simmons court's reliance on the phenomenon. See Benavidez, 998 F. Supp. at 1229 n.4. But we need not rely exclusively on Simmons and other cases that employ the transference phenomenon. Faced with a case very similar to the one before us, the Fourth Circuit, without relying on transference, concluded that a therapist's sexual

relationship with his patient constituted grounds for a negligent malpractice claim.  See Andrews, 732 F.2d at 370-71.

In Andrews, a government-employed therapist diagnosed the plaintiff as suffering from chronic depression.  The therapist soon began using counseling sessions to convince his patient that she needed an affair, and ultimately succeeded in seducing her into a sexual relationship.  See id. at 367-68.  As a result of the therapist's conduct, the plaintiff's emotional health worsened, and she ultimately filed suit under the FTCA.  The government argued that the suit stemmed from an assault and battery for which sovereign immunity is not waived.  See id. at 371.  The Fourth Circuit disagreed, and simply held that when a therapist seduces his patient while purporting to provide counseling, "the resulting cause of action is described as medical malpractice [and] not assault and battery."  Id.

The government attempts to distinguish Andrews by arguing that the patient in that case consented to her therapist's sexual advances because he convinced her that sexual intercourse with him was the best course of treatment for her.  The government contends that unlike the plaintiff in Andrews, Benavidez did not consent to Bullis's sexual contacts.  Thus, this case involves the intentional tort of assault and battery rather than negligent malpractice.  The district court agreed,

stating that "there is no doubt that Plaintiff does not allege that the sexual acts were consensual." Benavidez, 998 F. Supp. at 1229.

To state a claim for negligence rather than a claim for assault and battery, Benavidez did not have to allege that he engaged in consensual sexual relations with Bullis. One of the key distinctions between claims sounding in negligence and those sounding in intentional tort like assault and battery is that the latter requires an unconsented touching. See Restatement (Second) of Torts § 13 cmt. d (1965) ("The absence of consent . . . is inherent in the very idea of those invasions of interest and of personality which, at common law, were the subject of an action for trespass for battery [or] assault."). By alleging negligence,[5] Benavidez implicitly asserted that he consented to Bullis's sexual advances, and thus pleaded a claim for professional negligence or malpractice rather than for assault and battery.

Of course, a mere allegation of negligence does not turn an intentional tort into negligent conduct. See Wine v. United States, 705 F.2d 366, 367 (10th Cir. 1983); Naisbitt v. United States, 611 F.2d 1350, 1355-56 (10th Cir. 1980). To determine the nature of an asserted claim, we focus not on the label the plaintiff uses, but on the conduct upon which he premises his claim as supported by the

---

[5] See First Am. Compl. at ¶ 15 (alleging that "Bullis engaged in . . . psychological manipulation so as to negligently manipulate [Benavidez] into a long-term sexual relationship which served Bullis' needs") (emphasis added).

record.  See Sabow v. United States, 93 F.3d 1445, 1456 (9th Cir. 1996).  In concluding that Benavidez asserted a claim for assault and battery, the district court merely stated that "the complaint avers that Bullis forced himself on the plaintiff by misusing the therapeutic relationship and by encouraging the Plaintiff to use alcohol and drugs."  Benavidez, 998 F. Supp. at 1229 n.5.  Nowhere in the complaint or in the record, however, do we discern any support for the district court's conclusion that Bullis forcibly engaged in sexual relations with Benavidez.

**B**

The government argues, alternatively, that Benavidez admits to being so incompetent during the course of his therapy as to render meaningless whatever consent he may have given to Bullis's conduct.[6]  The government relies on Benavidez's testimony that his psychological condition rendered him unable to

---

[6]Relying on our decision in Franklin v. United States, 992 F.2d 1492 (10th Cir. 1993), aff'd on appeal after remand, 34 F.3d 1076 (10th Cir. 1994), the government argues that "an incompetent consent to the intentional invasions of one's person has no effect," and that therefore this case involves a battery.  Appellee's Br. at 30 (quoting Franklin, 992 F.2d at 1497).  However, Franklin and the other cases on which the government relies, including Thigpen v. United States, 800 F.2d 393 (4th Cir. 1986), overruled on other grounds by Sheridan v. United States, 487 U.S. 392 (1988), and New Mexico Physicians Mutual Liability Co. v. LaMure, 860 P.2d 734 (N.M. 1993), do not involve a therapist engaging in sexual contact with his emotionally distraught patient under the guise of therapy.  Instead, they involve sexual relations between physicians and patients.  "[C]ourts do not routinely impose liability upon physicians [or other professionals] for sexual contact with patients" or clients.  Simmons, 805 F.2d at 1366.

reject Bullis's sexual advances, although he nonetheless felt emotionally raped by Bullis's conduct. The district court agreed, stating that "the Plaintiff was in no condition at the time of the abuse to give his consent, and had essentially turned his will over to Bullis." Benavidez, 998 F. Supp. at 1229 n.5 (citing First Am. Compl. at ¶¶ 11-14).

The district court's finding and Benavidez's testimony merely reveal Benavidez's confusion about how to respond to the unsolicited sexual advances of a therapist upon whom he was so emotionally dependent, and whose suggestions he was unable to resist. The plaintiff in Andrews displayed a similar "confused dependency" and "ambivalence about continuing treatment" in the face of her therapist's sexual advances. Andrews, 732 F.2d at 369. Nonetheless, the Fourth Circuit rejected the government's argument that the therapist's sexual relationship with the plaintiff was nonconsensual.

Moreover, the court suggested that in such a case, consent may be irrelevant because the egregious nature of the therapist's conduct constitutes an act of professional negligence separate and apart from the act of intercourse. "'[T]he injury to the plaintiff [is] not merely caused by the consummation of acts of sexual intercourse. Harm [is] also caused by the [therapist's] failure to treat the patient with professionally acceptable procedures.'" Andrews, 732 F.2d at 371 (quoting Roy v. Hartogs, 381 N.Y.S.2d 587, 588 (N.Y. App. Term. 1976));

- 11 -

see also Art. 4.05 <u>Ethical Principles of Psychologists and Code of Conduct</u>

("Psychologists do not engage in sexual intimacies with current patients or

clients.")

### III

The gravamen of the complaint in this case is that under the guise of

providing counseling, a therapist violated professionally acceptable procedures

and induced an emotionally depressed and suicidal teenager, already prone to

alcohol and drug abuse, to indulge in the use of such substances and to engage in

sexual conduct. Given the settled federal and state law on this issue, we conclude

that the allegations in the complaint sufficiently support a claim for professional

negligence or malpractice. This sort of claim does not fall within the intentional

tort exception to the FTCA's waiver of sovereign immunity.[7]

**REVERSED.**

---

[7]Benavidez argues that even if Bullis's conduct fell within the FTCA's intentional tort exception, the district court still erred in dismissing his suit because (1) the government was directly negligent in hiring and supervising Bullis; and (2) 42 U.S.C. § 233(e) nullifies the FTCA's intentional tort exceptions so that the government is liable for the intentional tort of public health employees like Bullis. Because we conclude that Bullis's alleged conduct constituted negligent malpractice, we do not reach the other bases for Benavidez's suit.