**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 4, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PRISCILLA OLSEN,

      Plaintiff-Appellant,

  v.

UNITED STATES OF AMERICA, ex
rel. Department of the Army,

      Defendant-Appellee.

No. 04-7089
(D.C. No. 03-CV-463-W)
(E.D. Okla.)

**ORDER AND JUDGMENT**   *

Before **BRISCOE** , **ANDERSON** , and **BRORBY** , Circuit Judges.


After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. Introduction

Plaintiff-appellant Priscilla Olsen filed suit against the United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671-80. Ms. Olsen "sought money damages as a result of an incident which occurred on March 27, 2001, at which time she was sexually assaulted by a United States Army recruiter named Kelvin Key." Aplt. Br. at 2. The district court granted the United States' "Motion to Dismiss or in the Alternative, Motion for Summary Judgment," Aplt. App. at 15, concluding that: (1) Ms. Olsen failed to meet her burden of proof on the issue of whether Key was acting within the scope of his employment with the Army at the time of the sexual assault, *id.* at 167-68; and (2) Ms. Olsen's respondeat superior and negligence claims are barred by the FTCA's exception for intentional torts, *id.* 168-69. [1]

Having reviewed these issues de novo, we conclude that the FTCA's exception for intentional torts deprived the district court of subject matter jurisdiction over Ms. Olsen's respondeat superior and negligence claims. The United States was therefore entitled to summary judgment, and we affirm. We

---

[1] The district court also concluded that the negligence claims that Ms. Olsen asserted against Key's Army supervisors are barred by the FTCA's discretionary function exception. *See* Aplt. App. at 170. As set forth below, we do not need to rely on the district court's alternative ruling with regard to the discretionary function exception to affirm the entry of judgment in favor of the United States on Ms. Olsen's negligence claims. As a result, we will not address the district court's ruling with regard to the discretionary function exception.

note, however, that, when the district court entered judgment in favor of the United States, the court should have specified that it was dismissing this action for lack of subject matter jurisdiction. *Id.* at 171. To remedy this oversight, the district court's judgment is modified to reflect that this action was dismissed for lack of subject matter jurisdiction.

## II. Background

As pointed out by the district court, the facts in this case "are largely undisputed." Aplt. App. at 166. In her appellate brief, Ms. Olsen has described the factual background of this case as follows:

> Appellant, Priscilla Olsen, visited the Army Recruiting Office in McAlester, OK, on March 25, 2001, at which time she met [Sergeant] Kelvin Key, a recruiter at that office. [Sgt.] Key was still in his nine (9) month probationary period for Army recruiters in March 2001. [Sgt.] Key administered a practice [Army entrance] exam to Ms. Olsen which she did not pass. [Sgt.] Key gave Ms. Olsen a ride home from the recruiting office. During the car ride home, [Sgt.] Key mentioned to Ms. Olsen that he could help her out on the [Army entrance exam] by giving her some practice tests, etc. [Sgt.] Key phoned Ms. Olsen that evening and told her once again that he could help her to pass her [entrance] exam. Also, during the phone conversation [Sgt.] Key asked Ms. Olsen if she liked to fish and she responded in the affirmative.

> On March 27, 2001, [Sgt.] Key called Ms. Olsen and asked her if she would like to go fishing with him later that day. She agreed to go and once again asked [Sgt.] Key if he would help her to pass the [Army entrance] exam. [Sgt.] Key picked Ms. Olsen up at her home around 1:30 p.m. in a black jeep which bore "ARMY" stickers on it. [Sgt.] Key took Ms. Olsen fishing and proceeded to sexually assault her. Sgt. Key asked explicit questions about Ms. Olsen's sexual activity and offered to orally stimulate her. Sgt. Key then

masturbated in front of Ms. Olsen for about five minutes. At one point, Sgt. Key got out of the Jeep and opened the passenger door, at which point he began kissing Ms. Olsen's breasts, rubbing her crotch and tried to remove her clothes. Sgt. Key then led Ms. Olsen by the hand to a stall in the men's room, positioned himself behind her and attempted to remove her pants. Ms. Olsen pulled away from Sgt. Key and walked away while pulling up her pants. Sgt. Key returned to the jeep and drove Ms. Olsen home. On the way home, Sgt. Key stated that he and Ms. Olsen were going to have sex and made another advance to which Ms. Olsen pulled away. He asked Ms. Olsen not to tell anyone or he would risk losing his job with the Army.

Ms. Olsen reported [Sgt.] Key's sexual assault to the Recruitment Office Supervisor, on March 27, 2001. Ms. Olsen also reported the sexual assault to local law enforcement officials. Deputy Sheriff Trent Myers of the Pittsburg County Sheriff's Department investigated the complaint by Ms. Olsen. The Deputy stated in his affidavit that, during his investigation of Ms. Olsen's complaint, an employee of the Army contacted him and told him specifically that the Army had previously received a complaint of sexual assault against Mr. Key. Also, the Army admitted that they did not investigate this previous complaint because they did not believe the complainant.

Aplt. Br. at 3-5 (citations omitted).

In its response brief, the United States does not dispute that Key sexually assaulted Ms. Olsen during the fishing outing. The United States has also admitted that

Key's conduct toward Olsen violated Army restrictions on inappropriate contacts with recruits, including an Army regulation prohibiting any personal relationship or social contact between a recruiter and a potential recruit. As a recruiter, Key received regular training on these restrictions, which were taught not only during recruiters' initial nine-month probationary period but also during subsequent training sessions held on a weekly, monthly, quarterly,

-4-

and annual basis. Key's conduct was ultimately the basis for court-martial; he was convicted and ordered discharged from the Army.

Aplee. Br. at 6-7 (citations omitted).

### III. Jurisdictional Issues Under The FTCA

"The United States is immune from suit unless it has consented to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Hart v. Dep't of Labor ex rel. United States*, 116 F.3d 1338, 1339 (10th Cir. 1997) (quotations omitted). "The FTCA represents a waiver of the United States' immunity and must, therefore, be strictly construed." *Id.*

Under the FTCA, the United States has waived its sovereign immunity for torts committed by federal employees while acting within the scope of their employment, but the waiver does not include certain specified intentional torts. The Supreme Court has explained this dichotomy as follows:

> The FTCA gives federal district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, among other limitations, the Act also provides that this broad grant of jurisdiction "shall not apply to . . . [a]ny claim arising out of assault, battery" or other specified intentional torts. 28 U.S.C. § 2680(h).

-5-

*Sheridan v. United States*, 487 U.S. 392, 398 (1988). [2]

As noted above, applying these statutory provisions, the district court granted the United States' "Motion to Dismiss or in the Alternative, Motion for Summary Judgment," Aplt. App. at 15, concluding that Ms. Olsen failed to meet her burden of proof on the scope of employment issue, and that Ms. Olsen's claims were barred the FTCA's exception for intentional torts. The district court did not recognize, however, that, if correct, both of these conclusions lead to the result that the district court did not have subject matter jurisdiction over Ms. Olsen's FTCA claims. *See Dorking Genetics v. United States*, 76 F.3d 1261, 1264 (2d Cir. 1996) ("[A] claim which fails to state all six elements of § 1346(b) or which is otherwise excepted from § 1346(b), *see* 28 U.S.C. § 2680, must be dismissed for lack of subject matter jurisdiction."); *Dry v. United States*, 235 F.3d 1249, 1257 (10th Cir. 2000) ("The applicability of the [FTCA's] intentional tort exception is a question of subject matter jurisdiction, which we review *de novo*.") (citing *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir. 1993)). Consequently, when the district court entered judgment in favor of the United

---

[2] The FTCA's exception for intentional torts contains its own exception, as it does not apply to "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). This exception has no application to this case, however, because there is no evidence that Key was acting as an investigative or law enforcement officer.

States, the court should have specified that it was dismissing this action for lack of subject matter jurisdiction. *See* Aplt. App. at 171.

## IV. Standard of Review

The district court did not indicate which procedural rule it was relying on when it entered judgment in favor of the United States. Ordinarily, a party may challenge a district court's subject matter jurisdiction by bringing a motion to dismiss under Fed. R. Civ. P. 12(b)(1), and "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion [for summary judgment]." *Id.* We have also recognized, however, that

> a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

*Id.* (citations omitted).

In this case, the jurisdictional question is dependent on the same statutes which provide Ms. Olsen's substantive claims. *See* 28 U.S.C. §§ 1346(b)(1) and 2680(h). We also note that the district court referred to matters that are outside of the parties' pleadings in its order granting the United States' dispositive motion.

-7-

*See* Aplt. App. at 168-69. Accordingly, we conclude that the district court should have treated the United States' motion as a motion for summary judgment under Rule 56, and we will review the district court's order granting the United States' motion as an order granting summary judgment.

"We review the grant of summary judgment de novo applying the same standard as the district court embodied in Rule 56(c)." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Under Rule 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler*, 144 F.3d at 670.

### V. The FTCA's Intentional Tort Exception

### A. Respondeat Superior Liability for the Conduct of Key

In her appellate brief, Ms. Olsen first argues that the district court erred in concluding that she had failed to show that Key was acting within the scope of his employment with the Army at the time of the sexual assault. *See* Aplt. Br. at 7-11. Although it is unclear from Ms. Olsen's brief whether she is pursuing a claim against the United States based on the doctrine of respondeat superior, we will assume that she is raising the scope of employment issue as it pertains to Key in an attempt to impose vicarious liability on the United States for Key's conduct.

This is in contrast to the negligence claims discussed below, where Ms. Olsen is seeking to impose liability on the United States for the conduct of Key's Army supervisors.

In *Sheridan*, the Supreme Court recognized that "[t]he tortious conduct of an off-duty serviceman, not acting within the scope of his office or employment, does not in itself give rise to Government liability [under the FTCA] whether that conduct is intentional or merely negligent." *Sheridan*, 487 U.S. at 401. We do not need to resolve the scope of employment issue in this case, however, because it is equally well established that "a Government employee acting *within the scope of his employment* but committing [an assault or] a battery commits a tort excepted under § 2680(h)." *Leleux v. United States*, 178 F.3d 750, 757 n.6 (5th Cir. 1999); *cf. Franklin*, 992 F.2d at 1496 (noting that, if a plaintiff's theory of liability under the FTCA amounts to a "battery theory," "the action is specifically excluded from the government's waiver of sovereign immunity under the FTCA"). Here, there is no question that Key committed an assault and/or a battery when he sexually assaulted Ms. Holt. As a result, even if Key was acting within the scope of his employment with the Army at the time of the sexual assault, the FTCA's intentional tort exception bars Ms. Olsen from imposing liability on the United States based on a respondeat superior theory of liability. The United States was therefore entitled to summary judgment on Ms. Holt's respondeat superior claim.

## B. Liability for the Alleged Negligence of the Army Supervisors

As noted above, Ms. Olsen is also seeking to impose liability on the United States for the conduct of Key's Army supervisors. *See* Aplt. Br. at 11 (stating that "the Government is responsible because of negligence in screening, training, and supervising Sergeant Key"), at 13 (stating that "the Government should be held liable in this case for their (sic) negligence in retaining Sergeant Key as a recruiter, allowing him access to vulnerable young females, failing to train him on inappropriate behavior, and allowing this assault to occur").

In *United States v. Shearer*, 473 U.S. 52, 53 (1985), a four-justice plurality of the Supreme Court addressed the issue of "whether the survivor of [an Army] serviceman, who was murdered by another [Army] serviceman, may recover from the Government under the [FTCA] for negligently failing to prevent the murder." After noting that it was "clear that [plaintiff's] claim [arose] out of the battery committed by [the other serviceman]," *id.* at 54-55, the plurality concluded that the FTCA's intentional tort exception barred the plaintiff's negligence claim.

> [Plaintiff] cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [plaintiff's] that sound in negligence but stem from a battery committed by a Government employee.

*Id.* at 55.

-10-

In *Sheridan*, a case decided three years after *Shearer*, a majority of the

Supreme Court clarified that the FTCA's intentional tort exception does not bar

all negligence claims that are related to an assault or a battery committed by a

government employee. *See Sheridan*, 487 U.S. at 398 ("[I]t is both settled and

undisputed that in at least some situations the fact that an injury was directly

caused by an assault or battery will not preclude liability against the Government

for negligently allowing the assault to occur."). Instead, as the district court

recognized, the majority in *Sheridan* "held that liability may result from the

breach of an independent affirmative duty which takes place 'in a case in which

the employment status of the assailant has nothing to do with the basis for

imposing liability on the Government.'" Aplt. App. at 168 (quoting *Sheridan*,

487 U.S. at 402). As this court has explained, however, *Sheridan* did not

undercut the *Shearer* plurality's general analysis of § 2680(h):

> Since *Shearer*, . . . the Supreme Court has recognized one category of battery-related cases that falls outside the preclusive compass of § 2680(h). Specifically, when a negligence claim against the government arises out of an incident of battery but is in no way contingent on the perpetrator's federal employment status, i.e., when the government's liability is based on its breach of a duty owed the victim that is independent of its relationship, if any, to the perpetrator, § 2680(h) does not bar recovery under the FTCA. *Sheridan* [,] 487 U.S. [at] 400-03 . . . . With this important qualification, the *Shearer* plurality's general analysis of § 2680(h) appears to remain the prevailing view.

*Franklin*, 992 F.2d at 1498-99; *see also Borawski v. Henderson*, 265 F. Supp. 2d 475, 485 (D.N.J. 2003) ("The majority of the circuits addressing the meaning of the 'arising out of' clause have adopted the [*Shearer*] plurality view that a negligent hiring, supervision, or retention claim necessarily arises out of an underlying intentional tort, precluding government liability under the FTCA.").

We conclude that *Sheridan* is distinguishable, and that Ms. Olsen's negligence claims fall within the *Shearer* plurality's general analysis of § 2680(h). In *Sheridan*, "an obviously intoxicated off-duty [naval medical aide] named Carr fired several rifle shots into an automobile being driven by [the plaintiffs] on a public street near the Bethesda Naval Hospital." *Sheridan*, 487 U.S. at 393-94. As summarized by the Supreme Court, the shooting was preceded by the following events:

> After finishing his shift as a naval medical aide at the hospital, Carr consumed a large quantity of . . . alcoholic beverages. He then packed some of his belongings, including a rifle and ammunition, into a uniform bag and left his quarters. Some time later, three naval corpsmen found him lying face down in a drunken stupor on the concrete floor of a hospital building. They attempted to take him to the emergency room, but he broke away, grabbing the bag and revealing the barrel of the rifle. At the sight of the rifle barrel, the corpsmen fled. They neither took further action to subdue Carr, nor alerted the appropriate authorities that he was heavily intoxicated and brandishing a weapon. Later that evening, Carr fired the shots that caused physical injury to one of the [plaintiffs] and property damage to their car.

*Id.* at 395.

The plaintiffs subsequently "brought suit against the United States alleging that their injuries were caused by the Government's negligence in allowing Carr to leave the hospital with a loaded rifle in his possession." *Id.* at 394. "The District Court dismissed the action–and the Court of Appeals affirmed–on the ground that the claim [was] barred by the intentional tort exception to the [FTCA]." *Id.* On certiorari review before the Supreme Court, the question was thus "whether [plaintiffs'] claim [was] one 'arising out of' an assault or battery within the meaning of . . . § 2680(h)." *Id.* A majority of the Court answered this question in the negative and reversed the decision of the Court of Appeals, concluding that the case presented a "basis for Government liability that is entirely independent of Carr's employment status." *Id.* at 401. As the Court explained,

> By voluntarily adopting regulations that prohibit the possession of firearms on the naval base and that require all personnel to report the presence of any such firearm, and by further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed, the Government assumed responsibility to "perform [its] 'good Samaritan' task in a careful manner." *Indian Towing Co. v. United States*, 350 U.S. 61, 65 . . . (1955). The District Court and the Court of Appeals both assumed that [plaintiffs'] version of the facts would support recovery under Maryland law on a negligence theory if the naval hospital had been owned and operated by a private person. . . . On this assumption, it seems perfectly clear that the mere fact that Carr happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if Carr had been an unemployed civilian patient or visitor in the hospital. Indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on

the Government, it would seem perverse to exonerate the Government because of the happenstance that Carr was on a federal payroll.

*Id.* at 401-02 (footnotes omitted).

As noted above, Ms. Olsen is seeking to impose liability on the United States for the alleged negligence of Key's Army supervisors in "screening, training, and supervising . . . Key," Aplt. Br. at 11, and she argues in her appellate brief that " Sheridan applies directly to this case," *id.* at 12. Ms. Olsen's reasoning is as follows:

> Prior to Ms. Olsen's incident, the Army had received a complaint of sexual assault against Mr. Key. In Sheridan , an off-duty Navy employee was intoxicated and armed. Some Corpsmen discovered the "off duty" Navy employee; however, they did nothing even though they saw that he was inebriated and was carrying a weapon.
>
> . . . .
>
> Thus, the Sheridan case applies to this case where there was an Army employee who committed an assault while he was off duty. The United States failed to investigate and/or report any prior complaints made against Mr. Key. It was foreseeable that Mr. Key had the propensity to do the same thing again. Thus, the Government should be held liable in this case for their (sic) negligence . . . in the hiring, retention, and . . . supervision of Mr. Kelvin Key.

*Id.* at 12-13.

Ms. Olsen's analysis is unconvincing. As the government has pointed out in its response brief, even if the United States had "an obligation to investigate claims of sexual misconduct, . . . its obligation [arose] out of the employment

-14-

relationship with [Key]." Aplee. Br. at 22-23. Moreover, in contrast to the situation in *Sheridan* where the naval corpsmen voluntarily assumed responsibility to perform a Good Samaritan task, *see Sheridan*, 487 U.S. at 401, there is no independent basis for imposing a duty of care on the facts of this case. As a result, "[b]ecause the existence of any duty on the part of the United States to prevent Olsen's sexual assault is dependent on the government's employment relationship with [Key], Olsen's claims do not fall within . . . Sheridan." *Id.* at 23; *see also Garcia v. United States*, 776 F.2d 116, 117-18 (5th Cir. 1985) (holding that the FTCA's intentional tort exception barred claim against the United States for alleged negligence in supervising military recruiter who allegedly sexually assaulted a potential recruit).

The judgment of the district court is AFFIRMED. The district court's judgment is modified to reflect that this action was dismissed for lack of subject matter jurisdiction. *See* Aplt. App. at 171.

Entered for the Court

Wade Brorby
Circuit Judge

-15-