**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

TOSHA BLACKBURN; JOSH
BLACKBURN,

    Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 20-8005
(D.C. No. 1:19-CV-00134-KHR)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

Tosha Blackburn and Josh Blackburn appeal the district court's order

dismissing with prejudice their action under the Federal Tort Claims Act (the FTCA),

28 U.S.C. §§ 2671–2680. For the reasons explained below, we affirm in part, reverse

in part, and remand for further proceedings.

## BACKGROUND

At this stage, we accept as true all of the Blackburns' well-pleaded factual

allegations and view these allegations in the light most favorable to the Blackburns.

_See Garling v. U.S. Env't Prot. Agency_, 849 F.3d 1289, 1292–93 (10th Cir. 2017).

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

The Blackburns' complaint alleges the following facts:

Ms. Blackburn visited the Community Health Center of Central Wyoming (the CHCCW) for a gynecological examination. Dr. Paul M. Harnetty and Priscilla Martinez, a gynecologist and a nurse employed at the CHCCW, conducted the examination. Nurse Martinez, who was "not attentive" to Ms. Blackburn, was present for only part of the examination. App. 10. During the examination—presumably while Nurse Martinez was absent—Dr. Harnetty "made inappropriate conversation with Ms. Blackburn about her breast[s] and nipples, twisted her left nipple, rubbed and pinched Ms. Blackburn's labia, rubbed her clitoris and around her clitoral area, rubbed her rectum and digitally penetrated both Ms. Blackburn's vagina and rectum with his fingers." *Id.* at 11.

Ms. Blackburn reported Dr. Harnetty's conduct to the Casper Police Department. After police completed a broader criminal investigation, Dr. Harnetty was charged with sexual abuse of several of his patients, including Ms. Blackburn. He was later convicted of two counts of sexual assault in the second degree, neither of which related to his sexual assault of Ms. Blackburn.

Dr. Harnetty has a history of misconduct against patients and coworkers. But the CHCCW "failed to complete detailed and thorough due diligence" "in hiring, screening and performing a thorough background check" on Dr. Harnetty. *Id.* at 10. Had the CHCCW done its due diligence, the CHCCW would have discovered Dr. Harnetty's "past assaults, negligence, and harassment" and would have realized that Dr. Harnetty had previously had "improper sexual contact with patients and posed a

2

threat to his patients." *Id.* In addition, after Dr. Harnetty's hiring (but before his sexual assault of Ms. Blackburn), the CHCCW received formal complaints by other patients against Dr. Harnetty—but it failed to investigate or to discipline, suspend, or terminate him. Instead, the CHCCW allowed Dr. Harnetty "to continue seeing patients as usual following these formal complaints." *Id.* at 10.

More generally, the CHCCW also failed to implement and enforce policies and procedures requiring that a chaperone be present at all times during Papanicolaou (PAP) and gynecological examinations; failed to adequately train its employees to be present and attentive to patients during gynecological examinations; and failed to protect its patients by investigating complaints against Dr. Harnetty, disciplining Dr. Harnetty, and taking appropriate measures such as increasing supervision of Dr. Harnetty.

As a result of Dr. Harnetty's intentional conduct, Ms. Blackburn "required hospitalization, medication, [Eye Movement Desensitization and Reprocessing (EMDR)],[1] and extensive therapy and counseling." App. 11–12. Ms. Blackburn suffered "serious and permanent" injuries, and Mr. Blackburn was "deprived of the consortium of his wife." *Id.* at 12. The Blackburns sued, alleging eight claims for relief against the government: (1) negligent hiring by the CHCCW; (2) negligent training by the CHCCW; (3) negligent supervision of Nurse Martinez by the

---

[1] EMDR therapy was developed in 1987 to treat trauma and a range of experientially based disorders, including posttraumatic stress disorder. *See* Francine Shapiro, *Eye Movement Desensitization and Reprocessing (EMDR) Therapy: Basic Principles, Protocols, and Procedures* 1–7 (3d ed. 2018).

3

CHCCW; (4) negligent supervision of Dr. Harnetty by the CHCCW; (5) negligent performance by Nurse Martinez; (6) assault and battery by Dr. Harnetty; (7) negligent infliction of emotional distress by the CHCCW and Nurse Martinez; and (8) intentional infliction of emotional distress by Dr. Harnetty.

The government moved to dismiss for lack of subject-matter jurisdiction, arguing that the government has retained its sovereign immunity against claims arising out of an intentional assault or battery. The district court concluded that all eight of the Blackburns' claims met the condition of "arising out of" Dr. Harnetty's intentional assault or battery. That meant the government had fully retained its sovereign immunity. The district court further concluded that Mr. Blackburn's loss-of-consortium claim was derivative of Ms. Blackburn's claims and thus also failed. After determining that amending the complaint would be futile, the district court dismissed the case with prejudice.

## DISCUSSION

### I.  Sovereign Immunity

We review questions of subject-matter jurisdiction de novo. *See Iowa Tribe Of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010) ("A district court's evaluation of sovereign immunity and its decision to dismiss for lack of jurisdiction are reviewed de novo."). Plaintiffs bear the burden of establishing that the government "has waived its sovereign immunity with respect to their claim[s]." *Id.*

Where, as here, the jurisdictional question is intertwined with the merits, courts convert a motion to dismiss for lack of subject-matter jurisdiction under

4

Federal Rule of Civil Procedure 12(b)(1) into a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or a motion for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129–30 (10th Cir. 1999); *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008). The district court recognized that the Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction could be converted to one under Rule 12(b)(6) for failure to state a claim on which relief may be granted. We agree with that approach. *See Bell*, 127 F.3d at 1228; *Franklin Sav. Corp.*, 180 F.3d at 1129–30. Accordingly, we accept the complaint's well-pleaded factual allegations as true but not its legal conclusions. *See Garling*, 849 F.3d at 1292–93 (10th Cir. 2017).

## A.     Legal Framework

Sovereign immunity generally precludes federal jurisdiction to hear claims against the government. *See Garling*, 849 F.3d at 1294. But under the FTCA, Congress has waived sovereign immunity for certain state-law tort claims. For those claims, the government is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1).

Congress has excepted from this waiver some intentional-tort claims. *See Garling*, 849 F.3d at 1294 (citing 28 U.S.C. § 2680(h)).[2] Among these are any claims

---

[2] This threshold jurisdictional question of sovereign immunity is a matter of federal law, which assumes that "Congress proceeded from an understanding of

5

"arising out of assault [or] battery." § 2680(h). But in a further twist, 42 U.S.C. § 233(e) provides an exception to § 2680(h)'s assault-or-battery exception.[3] Section 233(e) waives governmental immunity for "assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigations." § 233(e).[4]

This statutory landscape leaves us with three questions: first, whether Dr. Harnetty's sexual assault of Ms. Blackburn "constituted a 'negligent or wrongful act' rather than an assault or battery for purposes of the FTCA," *Benavidez v. United States*, 177 F.3d 927, 929 (10th Cir. 1999) (quoting 28 U.S.C. § 1346(b)(1)); second, if it was an assault or battery, whether the Blackburns' other claims arose out of the assault or battery, *see* § 2680(h); and third, if it was an assault or battery, whether the assault or battery arose out of negligence in the performance of a medical, surgical, dental, or related function, *see* § 233(e).

## B.     Assault or Battery under 28 U.S.C. § 2680(h)

On appeal, seeking to avoid the assault-or-battery exception to the waiver of

---

established tort definitions." *Franklin v. United States*, 992 F.2d 1492, 1495–96 (10th Cir. 1993). Questions of liability, on the other hand, depend on the relevant state's law. *See id.* at 1495.

[3] Under § 233(e), the CHCCW is deemed a facility under the Public Health Service of the U.S. Department of Health and Human Services, and its employees are deemed employees of the Public Health Service.

[4] The difference between the two sections is that § 2680(h) bars negligence claims that arise out of assault or battery, whereas § 233(e) permits assault-or-battery claims that arise out of negligence.

sovereign immunity, the Blackburns recharacterize Dr. Harnetty's sexual assault of Ms. Blackburn as "negligent conduct," "akin to . . . malpractice." Aplt. Br. 9 (formatting omitted). In doing so, the Blackburns analogize the gynecologist-patient relationship to a therapist-patient relationship, suggesting an "emotional dependence" inheres in the "very unique," "physically 'intimate' or private" "heightened trust relationship." *Id.* at 10–11. Also on appeal, the Blackburns assert that Dr. Harnetty's physical contact with Ms. Blackburn was consensual "sexual touching" but "extended beyond the consent given." *Id.* at 11–12.

In making these arguments, the Blackburns rely heavily on our analysis in *Benavidez*. In *Benavidez*, a psychologist diagnosed his teenaged male patient with a variety of psychological disorders, including substance abuse and depression with suicidal intent—then used "therapy sessions to convince Benavidez that he was homosexual and that he should have sex with" the psychologist. *Benavidez*, 177 F.3d at 928. The psychologist also told Benavidez that continuing to abuse alcohol and drugs would be "appropriate and even therapeutic," leading to the two together using alcohol, marijuana, and other drugs. *Id.* We considered whether the psychologist's conduct constituted an assault or battery, or just negligence. *Id.* at 929. We noted that a "review of relevant federal and state court cases shows that [the psychologist's] conduct has traditionally been understood and commonly defined as negligent malpractice, which does not fall within the intentional tort exception to the FTCA's waiver of sovereign immunity." *Id.* (collecting cases). "Given the settled federal and state law on this issue," we concluded that the complaint sufficiently alleged a claim

7

for professional negligence or malpractice and that this claim did not fall within the assault-or-battery exception. *Id.* at 932.

In reaching this conclusion, we considered the parties' arguments about the "transference phenomenon," that is, a "tendency of patients to become emotionally dependent upon, and trusting of, their psychologist or psychiatrist." *Id.* at 930. We noted that though this phenomenon could apply in other professional relationships, it most critically, legally, and therapeutically applied in the psychotherapy context. *Id.* We observed that "[c]ourts have uniformly regarded mishandling of transference as malpractice or gross negligence." *Id.* (citation omitted). In addition, we reasoned that "[o]ne of the key distinctions between claims sounding in negligence and those sounding in intentional tort like assault and battery is that the latter requires an unconsented touching," and that by "alleging negligence, Benavidez implicitly asserted that he consented to [the] sexual advances, and thus pleaded a claim for professional negligence or malpractice rather than for assault and battery." *Id.* at 931. We considered the conduct at issue and determined that the "gravamen" of the complaint was that "under the guise of providing counseling, a therapist violated professionally acceptable procedures and induced an emotionally depressed and suicidal teenager, already prone to alcohol and drug abuse, to indulge in the use of such substances and to engage in sexual conduct." *Id.* at 932. Accordingly, we concluded that Benavidez's claim sounded in negligence. *See id.*

The Blackburns' claim is different. Contrary to the arguments in their appellate briefs, the Blackburns' complaint does not allege that Ms. Blackburn

8

consented in any way to the sexual contact from Dr. Harnetty. Instead, the complaint describes Dr. Harnetty's physical contact as an assault and battery. For instance, in their complaint the Blackburns refer to the physical contact as an "assault," an "assault and battery," a "sexual assault," a "sexual intrusion," "unwanted sexual contact," and an intentional "harmful and offensive touching without [Ms. Blackburn's] consent." App. 5, 10, 12, 17–19. The Blackburns entitle their sixth claim for relief as "Assault and Battery." *Id.* at 17 (formatting omitted). In addition, in their opening appellate brief, the Blackburns identify Dr. Harnetty as "the doctor who sexually assaulted [Ms. Blackburn]." Aplt. Br. 3.

The Blackburns have not presented any relevant federal or state cases ruling that sexual assault is "traditionally . . . understood and commonly defined as negligent malpractice" rather than an assault or battery. *Cf. Benavidez*, 177 F.3d at 929.[5] Indeed, case law points the other way. *See Olsen v. United States ex rel. Dep't of the Army*, 144 F. App'x 727, 731–32 (10th Cir. 2005) (unpublished) (stating "there is no question that Key committed an assault and/or a battery when he sexually assaulted Ms. Holt").[6]

---

[5] The Blackburns cite only *Benavidez* and an Arizona state case as support. The relevant state law here is that of Wyoming. And even if *St. Paul Fire & Marine Ins. Co. v. Asbury*, 720 P.2d 540 (Ariz. Ct. App. 1986), an insurance case, were somehow relevant here, the *Asbury* court recognized that the "question of insurance coverage [did] not turn on whether the conduct was negligent or intentional, or whether or not there was an assault and battery." *Asbury*, 720 P.2d at 541.

[6] Though *Olsen* is nonprecedential, we find it persuasive. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Nor would it have mattered had the Blackburns entitled their sixth claim as one for negligence, rather than for assault and battery. "[A] mere allegation of negligence does not turn an intentional tort into negligent conduct." *Benavidez*, 177 F.3d at 931. We focus "not on the label the plaintiff uses, but on the conduct upon which he premises his claim as supported by the record." *Id.* Here, the conduct underlying the Blackburns' claim amounts to an intentional tort. Indeed, the Blackburns have alleged that Dr. Harnetty "intentionally subjected [Ms. Blackburn] to harmful and offensive touching without her consent." App. 18.[7]

### 1. "Arising Out of Assault and Battery": 28 U.S.C. § 2680(h)

"Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *United States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality opinion). "[I]t is inescapable that the phrase 'arising out of assault [or] battery' is broad enough to encompass claims sounding in negligence." *Id.* at 56 (plurality opinion) (second alteration in original). "There is no indication that Congress distinguished between 'negligent supervision' claims and *respondeat superior* claims, with only the latter excluded under the Act," and "[n]o one suggested that liability would attach if the Government negligently failed to supervise" an assailant employee. *Id.* at 55 (plurality opinion). "Congress did not hint that it thought the Government's liability for an assault and battery

---

[7] Any "consent" by Ms. Blackburn differs from that in *Benavidez*: the consent at issue in *Benavidez* was the patient's consent to the psychologist's sexual advances, not consent to medical treatment. *See Benavidez*, 177 F.3d at 931.

turned on the adequacy of supervision or warnings." *Id.* at 56 (plurality opinion). The assault-or-battery exception therefore "cover[s] claims . . . that sound in negligence but stem from a battery committed by a Government employee," and a plaintiff "cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery." *Id.* at 55 (plurality opinion).

All of the Blackburns' claims stem from Dr. Harnetty's sexual assault. For their first claim, the Blackburns allege that the CHCCW negligently hired Dr. Harnetty, leading to their injuries and damages. But their damages result not just from CHCCW's hiring Dr. Harnetty but from his sexually assaulting Ms. Blackburn. For their second, third, and fifth claims, the Blackburns allege that the CHCCW negligently trained and supervised Nurse Martinez and that Nurse Martinez negligently performed her professional duties, and that they thus suffered injuries and damages. But again, their damages result not simply from Nurse Martinez's inattentiveness during the examination but from Dr. Harnetty's sexually assaulting Ms. Blackburn.[8] For their fourth claim, the Blackburns allege that the CHCCW negligently supervised Dr. Harnetty, again resulting in their injuries and damages. Again, they allegedly suffered damages not simply because the CHCCW did not sufficiently supervise Dr. Harnetty but because, as a result of the absence of a nurse or other chaperone, Dr. Harnetty was able to sexually assault Ms. Blackburn. For

---

[8] As explained below, though the negligent-performance claim against Nurse Martinez arises out of Dr. Harnetty's sexual assault and would normally be barred by § 2680(h), § 233(e)'s exception to the exception permits this claim to survive.

11

their seventh claim, the Blackburns allege that the CHCCW and Nurse Martinez negligently inflicted emotional distress due to their "negligence and failure to protect [Ms. Blackburn] from foreseeable harm." App. 18. They premise this claim on the failure to prevent Dr. Harnetty's sexual assault.[9] And the Blackburns' eighth claim, intentional infliction of emotional distress, alleges that Dr. Harnetty's sexual assault "caused" the Blackburns emotional distress, and thus is also premised on Dr. Harnetty's sexual assault. *Id.* at 19.

In short, none of the Blackburns' alleged damages would have occurred if not for Dr. Harnetty's sexual assault.[10] Thus, the Blackburns' claims are still within the orbit of Dr. Harnetty's sexual assault. "No semantical recasting of events can alter [this] fact." *Shearer*, 473 U.S. at 55 (plurality opinion). Their claims therefore fall within § 2680(h)'s assault-or-battery exception to the government's waiver of sovereign immunity under the FTCA.

### 2. Independent Duty under *Sheridan*

On appeal, the Blackburns attempt to assert a premises-liability-type theory to argue that the CHCCW owed Ms. Blackburn a duty of care apart from its employment of Dr. Harnetty and Nurse Martinez. The idea is that this would free

---

[9] The district court alternatively dismissed the negligent-infliction-of-emotional-distress claim for failure to state a claim, since, under Wyoming law, plaintiffs may prevail on this claim only if they witnessed serious harm to a third party (a close relative). The Blackburns do not dispute the dismissal of the claim on this basis.

[10] *See Franklin*, 992 F.2d at 1499 ("Negligence standing alone, without causal connection to cognizable injury, is not actionable.").

12

their claims based on the CHCCW's negligent supervision of Dr. Harnetty and Nurse Martinez from § 2680(h). In support, the Blackburns point to *Sheridan v. United States*, 487 U.S. 392 (1988).

In *Sheridan*, a naval medical aide at a hospital finished his shift; consumed a large quantity of alcohol; packed a bag, including a rifle and ammunition; and left his quarters. *Sheridan*, 487 U.S. at 395. Later, three naval corpsmen found the naval aide "in a drunken stupor on the concrete floor of a hospital building" and "attempted to take him to the emergency room." *Id.* This failed when "he broke away, grabbing the bag and revealing the barrel of the rifle." *Id.* On seeing the rifle barrel, the corpsmen fled. *Id.* After fleeing, the corpsmen failed to alert the authorities that the naval aide "was heavily intoxicated and brandishing a weapon." *Id.* Later that evening, the naval aide fired shots into a passing car, wounding an occupant. *Id.*

Thus at issue was "a claim arising out of two tortious acts," one an assault or battery and the other "a mere act of negligence." *Id.* at 398. According to the *Sheridan* Court, "in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." *Id.* The negligence of the corpsmen, "who allowed a foreseeable assault and battery to occur[,] may furnish a basis for Government liability that is entirely independent of [the naval aide's] employment status." *Id.* at 401. In other words, liability could occur by the government's "voluntarily adopting regulations that prohibit the possession of firearms on the naval base and that require all personnel to report the presence of any such firearm, and by

13

further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed." *Id.* (footnote omitted). The Court reasoned that "the Government assumed responsibility to perform [its] good Samaritan task in a careful manner." *Id.* (alteration in original) (citation and quotations omitted). The Court emphasized that the naval aide's employment status "ha[d] nothing to do with the basis for imposing liability." *Id.* at 402. Importantly, because his employment status was "irrelevant to the outcome," the Court declined to "consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault or battery by a Government employee." *Id.* at 403 n.8.

On appeal, again first asserting a premises-liability-type theory, the Blackburns claim that the CHCCW's negligence, which allowed a foreseeable sexual assault to occur, provides a basis for liability "independent of [Dr. Harnetty's] status as an employee." Aplt. Br. 29. According to the Blackburns, the government would be equally liable if Dr. Harnetty were merely "a volunteer clown with a history of pedophilia" allowed on its premises. *Id.* But the Blackburns' complaint does not allege a claim for premises liability, and the claim for negligent supervision of Dr. Harnetty is a poor substitute, as it "focuses exclusively on Dr. Harnetty's status as a Health Center employee." Aplee. Br. 17. The complaint also does not allege that the government voluntarily undertook similar duties to those present in *Sheridan*. And the *Sheridan* Court also suggested that, where employment status is truly irrelevant, a negligent-supervision claim may not even lie under the FTCA for a foreseeable assault or battery by an employee. *See id.* at 403 n.8; *see also Franklin*, 992 F.2d at

14

1499 n.6 (calling it "doubtful on our alleged facts whether [a claim for negligent supervision], which would still ultimately derive from the government's employment relationship to the immediate tortfeasors, would escape the reach of § 2680(h)"). We therefore conclude that *Sheridan* does not save the Blackburns' negligent supervision claims.[11]

## C.     Negligence under 42 U.S.C. § 233(e)

The Blackburns contend that even if the assault-or-battery exception applies, the government has still waived its sovereign immunity under § 233(e). That statute overrides the exception for claims involving "assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigations." § 233(e). The parties argue that § 233(e) applies only to claims for medical negligence or medical

---

[11] If the Blackburns rely on the *Sheridan* distinction outside of a premises-liability-type theory, we have rejected a similar argument. *See Olsen*, 144 F. App'x at 733–34. There, the plaintiff sued the government for its negligence in screening, hiring, training, retaining, and supervising its employee. *Id.* at 734. Though someone had complained that the employee had sexually assaulted him or her, the government neither investigated nor reported the complaint. *See id.* In rejecting the claim, we explained that any duty to prevent the plaintiff's later sexual assault was entirely "dependent on the government's employment relationship" with the assailant and "there [was] no independent basis for imposing a duty of care," such as Good Samaritan responsibility. *Id.* (citation and quotation omitted). Because the negligence claims fell outside the *Sheridan* distinction and inside "the *Shearer* plurality's general analysis of § 2680(h)," we modified the district court's judgment to base the dismissal on subject-matter-jurisdiction grounds. *Id.* at 733–34. Moreover, in *Franklin*, we clarified that the "distinction drawn in *Sheridan* does not alter our conclusion, under the *Shearer* approach," that a case in which "'negligent' pre-surgical conduct . . . is part and parcel of the very battery claim that has implicated § 2680(h)" "falls within the scope of § 2680(h)." *Franklin*, 992 F.2d at 1499.

15

malpractice.[12] The Blackburns assert that Dr. Harnetty, the CHCCW, and Nurse

Martinez's actions meet that qualification.

But the complaint alleges that Dr. Harnetty's conduct was intentional, not

negligent, and was outside the performance of a medical or related function. Though

the conduct occurred during a medical examination, Dr. Harnetty's sexual assault of

Ms. Blackburn was neither legitimate medical treatment nor related to legitimate

medical treatment.[13]

---

[12] The government in particular repeats this assertion throughout its brief. Aplee. Br. 21 ("[S]ection 233 waives sovereign immunity *only for conduct that constitutes medical malpractice.*" (emphasis added)); *e.g., id.* at 1, 3–5, 4 n.1, 8–9, 19–22. We see no such limit in the plain language of § 233(e)'s text. *Cf. Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) (suggesting that "nothing in the language of § 233(a) . . . support[s] th[e] conclusion" that "§ 233(a) provides immunity only from medical malpractice claims"). Though medical malpractice is generally referenced elsewhere in § 233, § 233(e) simply states "negligence." § 233(e). But because the parties do not ask us to interpret § 233(e) anew, we adopt the parties' interpretation and we assume that § 233(e) covers this type of conduct, for purposes of this appeal only. We do not hold that the statute requires or is limited to such conduct.

[13] In addition, in *Franklin*, we considered a similar provision covering Veterans Administration personnel in the context of unauthorized medical treatment. *See Franklin*, 992 F.2d at 1496. There, in determining whether the Veterans Administration provision applied, we differentiated between medical battery and "negligent unauthorized treatment, in which the patient [had] admittedly consented to surgery, but on the basis of an inadequate disclosure of the medical considerations involved, such as potential risks, benefits, and alternative treatment options." *Id.* In *Willis v. Bender*, 596 F.3d 1244 (10th Cir. 2010), we similarly analyzed claims for lack of informed consent and medical malpractice under Wyoming law, and determined that, because the surgery was "not completely unauthorized," negligence principles applied. *Id.* at 1254. To the extent that negligence in the performance of a medical function turns on the doctrine of informed consent, the Blackburns did not allege consent on the basis of an inadequate disclosure. *See Franklin*, 992 F.2d at 1496. Instead, the Blackburns alleged that Ms. Blackburn did not consent at all.

And as for the CHCCW, the Blackburns' claims for negligent hiring and negligent training also do not survive the government's motion to dismiss. The Blackburns insist that "arising out of negligence" means "arising out of 'medical negligence' or 'medical malpractice,'" and the government agrees. Aplt. Br. 16. We cannot say that negligent hiring or negligent training would be "traditionally . . . understood and commonly defined as negligent malpractice." *Benavidez*, 177 F.3d at 929.

But the Blackburns have stated a claim against Nurse Martinez for negligent performance of a medical or medical-related function. Section 233(e) may cover an assault or battery arising out of Nurse Martinez's alleged negligence (her inattention and her absence) in her separate role as the nurse during the underlying gynecological examination. The district court therefore erred by dismissing this claim with prejudice.[14]

## II. Dismissal with Prejudice

As for the dismissal with prejudice, it is true that "[a] longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (citing *Albert v. Smith's Food &*

---

[14] We do not pass on the merits of this claim. At this stage, we are obligated to view the Blackburns' factual allegations in the light most favorable to them, and we simply conclude that the Blackburns have sufficiently "nudged their claim[] across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004); and then citing *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973)). "Jurisdictional dismissals ordinarily should be entered *without* prejudice," *Barnes v. United States*, 776 F.3d 1134, 1151 (10th Cir. 2015), because jurisdictional dismissals ordinarily are not "adjudication[s] of the merits," *Martinez*, 472 F.2d at 1126; *see also Albert*, 356 F.3d at 1249 (stating the district court "had no jurisdiction to resolve the merits of the claims").

On the other hand, "[t]he determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues." *Bell*, 127 F.3d at 1228 (alteration in original) (quoting *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991)). And a dismissal that "operates on the merits" of a complaint may "ordinarily be entered with prejudice." *Brereton*, 434 F.3d at 1219.

In *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), for example, we considered the applicability of an FTCA exception and concluded that the government had not waived its sovereign immunity. *Id.* at 1213. Because the district court "lacked subject matter jurisdiction to consider the claim," we held that the district court had "properly dismissed the tort claim *with* prejudice." *Id.* at 1213–14 (emphasis added); *see also id.* at 1214–15 (Hartz, J., concurring) (explaining why the concurring judge "agree[d] with our dismissal with prejudice of the claims for which the district court lacked subject-matter jurisdiction").

18

Moreover, we construe the government's motion as a motion to dismiss for failure to state a claim. When "it is patently obvious that [a plaintiff] cannot proceed with her claims, and any further opportunity to amend would be futile because her claims would still be barred," dismissal with prejudice is appropriate. *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014).

The Blackburns contend that amendment would not be futile. According to the Blackburns, they "can restructure the Complaint to avoid any jurisdictional problems," and they believe the district court "hinted at this" when it commented on "counsel's seriously-unfortunate labeling" of their claim as a claim for assault and battery. Aplt. Br. 32.

Futility is a question of law we review de novo. *See Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010); *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018). But we "will not conjure facts [the Blackburns] might conceivably raise in support of [their] claims." *Requena*, 893 F.3d at 1205. "Our restraint is particularly critical when [the Blackburns] made no appropriate effort in the district court to seek amendment or to indicate, there or here, how amending [their] complaint would cure its deficiencies ([they] contend[], implicitly at least, that [their] pleadings are adequate)." *Id.* at 1205–06; *see also id.* at 1206 (stating that "[a]nything less" than a "proper motion to amend, accompanied by a proposed amended complaint or a detailed description of proposed amendments," "simply invites a 'merry-go-round' ride"). We conclude that the Blackburns' claims—save their negligent-performance claim against Nurse Martinez—cannot proceed, and any further opportunity to amend

19

would be futile because their claims would still be barred. *See Knight*, 749 F.3d at 1190–91.[15] We therefore affirm the dismissal of the Blackburns' other claims with prejudice.

**CONCLUSION**

Because the Blackburns' negligent-performance claim as to Nurse Martinez falls within § 233(e)'s exception to the exception, we reverse the district court's order dismissing it with prejudice and remand for further proceedings. Because the Blackburns' other claims are barred by § 2680(h) and do not fall within § 233(e), we affirm the district court's dismissal with prejudice.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[15] The district court considered the alleged conduct underlying the assault-and-battery claim and concluded that the "allegations fit squarely within the definition of assault and battery, and therefore must be dismissed for lack of subject-matter jurisdiction." App. 104. Nowhere did the district court suggest that amendment could cure this fundamental defect.

20